# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| In Re: Administrative Subpoena No. 25-1431-019 | No. 1:25-mc-91324-MJJ<br>**FILED UNDER SEAL** |
|---|---|

# BOSTON CHILDREN'S HOSPITAL'S
# REPLY BRIEF IN SUPPORT OF ITS MOTION TO SEAL

The Children's Hospital Corporation d/b/a Boston Children's Hospital ("BCH") respectfully submits this Reply to the Government's Opposition to BCH's Motion to Seal. In its Opposition, the Government overlooks the lack of precedent supporting public access to materials relating to pre-charge criminal investigations and the harm BCH will suffer as a result of public acknowledgment that it is under criminal investigation. The Opposition callously dismisses as a "hoax" the very real and ongoing threats of violence and harassment directed toward BCH, its staff, and its patients—threats that have already resulted in one criminal conviction in this district. These real and continued threats underscore the compelling need for sealing in this matter. Good cause exists to seal these proceedings, notwithstanding the general presumption of public access in civil proceedings relied on by the Government, because unsealing would expose BCH and its personnel to a heightened risk of harm and further harassment and potentially undermine the safety and privacy interests of an already vulnerable group of patients and providers.

These particularized, continuing threats distinguish this pre-charge criminal investigation, where there is no tradition or history of public access, from the routine civil cases on which the Government relies. Contrary to the Government's assertion, BCH does not advocate for a blanket rule insulating all controversial enforcement matters from public view; it asks only that litigation about this non-public criminal investigation remain sealed, as is standard in such matters. Because BCH has demonstrated concrete, specific harms that sealing will avert, and because sealing is appropriate in this criminal investigation, the Motion to Seal should be granted.

I. **The Government Fails to Justify Unsealing a Pre-Charge Criminal Investigation**

The Government does not address the unique reputational stain on a person or entity and associated harms that result from being associated with an ongoing criminal investigation. The Government attempts to sidestep the tradition of confidentiality in grand jury and other pre-charge criminal proceedings by claiming that the lack of an explicit statutory authorization to seal the

proceedings should end the Court's inquiry.¹ *See* Opp'n at 3. But the statute need not expressly authorize sealing of the docket here, because "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). That is particularly true where, as here, the matter involves a pre-charge criminal investigation; there is "no presumptive right of public access, based either in the common law or the First Amendment" that attaches to the subpoenas or related materials "filed in connection with [an] underlying criminal prosecution." *United States v. Kravetz*, 706 F.3d 47, 56 (1st Cir. 2013).

In *United States v. Kravetz*, the First Circuit addressed whether Rule 17(c) subpoenas served in a criminal prosecution and related briefing should remain sealed; and its reasoning applies equally to administrative subpoenas served in connection with this pre-charge criminal investigation. As with Rule 17(c) subpoenas, there is no "tradition of access" to administrative subpoenas and related filings. 706 F.3d at 54. The Court's review of the administrative subpoena and pleadings in this case similarly would not be "undertaken in order to dispose of any issue as to the elements of [] criminal charges against [BCH]." *Id.* (internal quotation marks omitted). Notwithstanding the Government's arguments to the contrary, nothing in the text of 18 U.S.C. § 3486 or controlling precedent requires that this matter be unsealed; rather, the First Circuit has made clear that "public access has little positive role in the criminal discovery process." *Id.*

The Government relies on a series of inapposite civil cases in support of unsealing. But there is a stronger tradition of public access in civil proceedings, whereas no such tradition exists

---

¹ The Opposition notes that 18 U.S.C. § 3486 contemplates that the government would seek a nondisclosure order if the disclosure would endanger the life or physical safety of any person or result in witness intimidation. But nothing in the text of § 3486 precludes the subpoena recipient from invoking the same protections. Where, as here, the Government has declined to exercise that statutory right, and BCH alleges the subpoena was served with an improper purpose, the Court would be justified in extending the confidentiality scheme in furtherance of the statutory purpose.

for pre-charge criminal investigations. Those civil cases also address whether merits-based pleadings should be unsealed, not pleadings contesting the issuance of subpoenas, which are not traditionally public. For example, in *Doe v. Public Citizen*, a company brought a civil action seeking to enjoin the United States Consumer Product Safety Commission from publishing a report in a public database that attributed the death of an infant to a product manufactured and sold by the company. *See* 749 F.3d 246, 252 (4th Cir. 2014). The company sought to litigate the merits of the case under seal primarily to avoid economic harm,[2] not because unsealing would threaten the safety of anyone involved in the proceeding or implicate the company in an ongoing criminal investigation. *Id.* at 269. The sole case cited by the Government involving an administrative subpoena did not raise the same acute risk of harm present in this case. In *United States v. ISS Marine Servs., Inc.*, the court unsealed a case, which had been sealed entirely since its initial filing, because the proponent offered only "nebulous privacy interests," as the basis for keeping the case sealed. *See* 905 F.Supp.2d 121, 141 (D.D.C. 2012).[3]

In contrast, this matter involves an attempt to enforce an administrative subpoena in connection with a pre-charge criminal investigation, the disclosure of which threatens the safety

---

[2] Despite the implication that BCH is attempting to keep the "proceeding secret by saying that [it] might lose patients because of the case," Opp'n at 4, BCH made no such argument. While it may be true that patients would be deterred from seeking care at BCH if the existence of the Subpoena is disclosed, BCH's concern in seeking to seal this matter is the safety of its personnel and patients.

[3] The other cited cases are similarly inapposite. *See FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) (civil action where party sought to seal financial statements for privacy reasons); *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406 (D.C. Cir. 1996) (defendant was required to post a notice referencing a consent decree, thus there was a clear need for public access); *Chikel v. Steward Health Care Sys., LLC*, No. 18-CV-10959-ADB, 2018 WL 11463444 (D. Mass. Nov. 7, 2018) (civil proceeding involving vague allegations of employment retaliation that could result from unsealing); *Hui v. Fed. Rsrv. Bank of New York*, No. 1:24-CV-6788-GHW, 2025 WL 1294860 (S.D.N.Y. May 4, 2025) (civil proceeding where plaintiff sought to seal 9 months of the record because of reputational and financial concerns); *Ferring Pharm., Inc. v. Braintree Labs., Inc.*, 215 F. Supp. 3d 114, 128 (D. Mass. 2016) (civil proceeding where court denied request to seal because "bare assertions of inconvenience are insufficient cause to seal documents").

of BCH personnel and patients. *See* Government's Response to BCH's Motion to Quash at 11 (alleging that the Government is investigating potential violations of criminal statutes). For those reasons, the authority cited by the Government misses the point and fails to explain why unsealing matters that are traditionally confidential is appropriate in this case. Nor does the Government's representation that it "recognizes the sensitive privacy interests at stake and will scrupulously adhere to the statute's privacy protections" cure the potential harm to BCH, particularly considering the Government's rather startling public statements about this investigation. Opp'n at 4. Since BCH filed its Motion to Seal, the Government has issued an extraordinary press release announcing its issuance of more than 20 subpoenas to doctors and clinics involved in GAC, in contravention of Department guidelines. *Compare* Press Release, U.S. Dep't of Justice, Office of Public Affairs, Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical, *with* Justice Manual § 1-7.400 ("DOJ generally will not confirm the existence of or otherwise comment about ongoing investigations."). In that press release, the Attorney General of the United States revealed the politically rooted purpose of the ongoing investigations, saying, "[m]edical professionals and organizations that mutilated children in the service of a warped ideology will be held accountable by this Department of Justice." *Id.* These efforts by the Government to stir up antagonism against providers of GAC demonstrate precisely why BCH's Motion to Quash should proceed under seal, and why it should be granted.

## II. BCH Has Made a Particularized Factual Showing of Potential Harm

The Government recognizes that the general presumption of public access to judicial records is not absolute; its quarrel is with the sufficiency of BCH's showing of harm. Notwithstanding BCH's cataloguing in its Motion to Seal of the concrete threats of violence and

- 4 -

harassment experienced by its patients and providers because of its provision of GAC, the Government cavalierly dismisses the prospective harms from unsealing as "non-specific" and characterizes as a "hoax" a bomb threat directed at BCH that was successfully prosecuted as a crime by the DOJ itself. Far from viewing such conduct as a mere "hoax," federal law recognizes the harm posed by such threatening conduct by making it punishable by up to 10 years' imprisonment. As noted in the Motion to Seal, public exposure of this litigation invites continuation of this troubling conduct and the other harms experienced by BCH personnel because of their provision of GAC. *See* Mot. to Seal at 4 ("the harassment of the care providers involved in the GeMS program included phone calls and emails threatening violence, death, and mass casualty attacks at BCH").[4] The Government minimizes not only the mental and emotional toll the threats and harassment inflict on BCH providers and patients, but also the actions BCH has been forced to take in the face of this onslaught, including locking down the hospital and enrolling providers in the Massachusetts address confidentiality program. *Id.* These are not the type of "consequences any litigant bringing a public lawsuit in this country faces." *Hui*, 2025 WL 1294860 at *3. Rather, they constitute a particularized factual demonstration of potential and actualized harm that BCH, its staff, and patients would sustain in the absence of sealing.[5]

---

[4] Messages targeting BCH and its employees have come in several forms: threatening and abusive telephone calls; threatening and profane messages submitted through the hospital's online appointment registration system; threatening and profane messages sent to doctors via email or telephones; mail to doctors with violent imagery; and threatening and harassing messages posted publicly on social media sites. Just within the past few days, there have been posts on social media stating "BURN IT DOWN" and that "someone should bomb" BCH. BCH's employees have feared for their personal safety and that of their families, and significant security measures have had to be implemented.

[5] BCH seeks sealing until further order of the Court. Should circumstances change—*e.g.*, the matter moves out of the investigatory stage—the Court may revisit the seal to determine whether the same factors that warrant sealing exist. The Opposition offers no workable alternative to cure the core injury: disclosure that BCH is involved in a criminal investigation related to GAC. By sealing now and reevaluating later, the Court safeguards both the public's right of access should it be warranted and the immediate safety of patients and staff.

Dated:  July 29, 2025

Respectfully submitted,

| | |
|---|---|
| */s/ Joshua S. Levy* | */s/ Amanda Masselam Strachan* |
| BBO# 563017 | Amanda Masselam Strachan |
| ROPES & GRAY LLP | BBO# 641108 |
| 800 Boylston Street | WILMER CUTLER PICKERING |
| Boston, MA 02119 |   HALE AND DORR LLP |
| Telephone:  (617) 951-7000 | 60 State Street |
| joshua.levy@ropesgray.com | Boston, MA 02109 |
| | Tel: (617) 526-6000 |
| | Fax: (617) 526-5000 |
| | amanda.masselamstrachan@wilmerhale.com |
| Douglas Hallward-Driemeier | |
| BBO# 627643 | Boyd Johnson (*pro hac vice*) |
| ROPES & GRAY LLP | Alan Schoenfeld (*pro hac vice*) |
| 2099 Pennsylvania Avenue NW | WILMER CUTLER PICKERING |
| Washington, DC 10036 |   HALE AND DORR LLP |
| Telephone:  (202) 508-4600 | 7 World Trade Center |
| douglas.hallward-driemeier@ropesgray.com | 250 Greenwich Street |
| | New York, NY 10007 |
| | Tel.: (212) 230-8800 |
| Brian R. Blais | Fax: (212) 230-8888 |
| BBO# 660601 | boyd.johnson@wilmerhale.com |
| ROPES & GRAY LLP | alan.schoenfeld@wilmerhale.com |
| 1211 Avenue of the Americas | |
| New York, NY 10036 | Brian M. Boynton (*pro hac vice*) |
| Telephone:  (212) 596-9090 | WILMER CUTLER PICKERING |
| brian.lais@ropesgray.com |   HALE AND DORR LLP |
| | 2100 Pennsylvania Avenue NW |
| | Washington, DC 20037 |
| | Tel.: (202) 663-6000 |
| | Fax: (202) 663-6363 |
| | brian.boynton@wilmerhale.com |
| | |
| | *Counsel for Plaintiff The Children's Hospital Corporation d/b/a Boston Children's Hospital* |